IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROCKWOOD SELECT ASSET FUND XI (6)-1, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br>DEVINE, MILLIMET & BRANCH, a New Hampshire Professional Association,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br><br><br><br>Case No. 2:13-CV-44 TS |

This matter is before the Court on Defendant Devine, Millimet & Branch's Motion to Dismiss for Lack of Personal Jurisdiction.[1]  For the reasons provided below, the Court will grant Defendant's Motion.

---

[1]Docket No. 8.

1

I.  BACKGROUND

The following background statement is drawn from the well-pled allegations of Plaintiff's Complaint and the parties' affidavits.  At this stage of the litigation, all factual disputes in the parties' affidavits are resolved in Plaintiff's favor.[2]

Plaintiff Rockwood Asset fund XI (6)-1, LLC ("Rockwood"), is a Utah limited liability company.  Plaintiff's principal place of business is located in Utah.  Dan Purjes is the sole member and owner of Rockwood and is a primary resident of Utah.  Defendant is a law firm domiciled in the state of New Hampshire, with its principal place of business in New Hampshire.

In 2011, Plaintiff was approached by Martha McAdam and certain entities owned or controlled by Ms. McAdam (the "McAdam Borrowers") to obtain a loan in the amount of $1,625,000 (the "Loan").  The McAdam Borrowers agreed to secure the Loan by granting to Plaintiff a security interest in certain real property located in New Hampshire.

Karen S. McGinley is a shareholder of Defendant.  Ms. McGinley has represented Ms. McAdam on various unrelated matters since approximately 1995.  In April 2011, Ms. McAdam contacted Ms. McGinley and asked her to represent the McAdam Borrowers at the closing of the Loan.

As a condition precedent to providing the Loan to the McAdam Borrowers, Plaintiff requested that Defendant issue an opinion to Plaintiff that addressed whether any legal action was pending or threatened against the McAdam Borrowers, whether the financial statements being

---

[2]*See Dudnikov v. Chalk & Vermillion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th Cir. 2008).

provided by the McAdam Borrowers were valid and not misleading, and whether the McAdam Borrowers were current in their financial obligations.  Defendant also requested a master lease assurance for one of the leases at the New Hampshire property.

During the course of the loan transaction, Mr. Purjes spoke with Ms. McGinley by phone from Utah and requested that she provide the opinion letter to Plaintiff in Utah.  Mr. Purjes also met in person with Ms. McGinley at Defendant's offices in New Hampshire.  In that meeting, Mr. Purjes confirmed that he was a Utah resident.

Until shortly before the closing on the loan, Defendant was under the understanding that Plaintiff was a Vermont limited liability company.  All proposed loan documents Defendant received prior to July 18, 2011, referred to the lender as a Vermont limited liability company and named Vermont as the choice of forum in the event of any litigation between the parties.  On July 19, 2011, Defendant received revised documents, which changed the state of organization for the lender to Utah.  In the revised documents, the choice of forum remained in Vermont.

Ms. McGinley drafted the opinion letter and put it in an envelope addressed to Plaintiff in Utah.  However, Ms. McGinney did not mail the letter to Defendant.  Rather, Ms. McGinney included the opinion letter with loan documents that were provided to a representative of Plaintiff at Defendant's offices in New Hampshire on July 21, 2011.  On that same day, Mr. Purjes signed the loan documents before a notary in the state of Vermont.

After the loan closed, Plaintiff discovered that Defendant had made material misrepresentations in the opinion letter.  Plaintiff also discovered that Defendant had a pecuniary

interest in the Loan, because Defendant was owed a substantial amount of money by Ms. McAdam.

## II.  DISCUSSION

Plaintiff carries the burden of establishing personal jurisdiction over Defendant.[3]  "In the preliminary stages of litigation, however, the plaintiff's burden is light.  Where, as in the present case, . . . the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists."[4]

"'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[5] "Because Utah's long-arm statute confers the maximum jurisdiction allowed by due process of law,"[6] "'the first, statutory, inquiry effectively collapses into the second, constitutional, analysis.'"[7]

---

[3]*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[4]*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citing *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)).

[5]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[6]*ICON Health & Fitness, Inc. v. Relax-A-Cizor Prods., Inc.*, 2013 WL 1750249, at *1 (D. Utah April 23, 2013) (citing *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985)).

[7]*Id*. (quoting *Dudnikov*, 514 F.3d at 1070); *see also Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003) (holding that "[i]t is frequently

To satisfy the constitutional requirement of due process, the defendant must have such "minimum contacts" with the forum state such "that he should reasonably anticipate being haled into court there."[8]  If the Court finds that Defendant had adequate minimum contacts with the forum state, the Court must also determine that personal jurisdiction is reasonable in light of the circumstances surrounding the case.  In other words, exercising jurisdiction must not offend traditional notions of "fair play and substantial justice."[9]

A.    MINIMUM CONTACTS

The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction.[10]

1.    GENERAL JURISDICTION

For general jurisdiction to exist, the defendant must conduct substantial and continuous local activity in the forum state.[11]  Neither party argues that this Court has general jurisdiction over Defendant.  Further, the allegations of Plaintiff's Complaint and the evidence submitted in the parties' affidavits demonstrate that Defendant has not conducted substantial and continuous local activity in this forum.  Accordingly, the Court finds that it does not have general jurisdiction over Defendant.

helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute").

[8]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980).

[9]*Burger King v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

[10]*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090–91 (10th Cir. 1998).

[11]*Soma Med. Int'l*, 196 F.3d at 1295.

2.      SPECIFIC JURISDICTION

To meet the minimum contacts requirement in the specific jurisdiction context, the defendant must purposefully direct its activities at the forum, and the plaintiff's injuries must arise out of those forum-related activities.[12]  Plaintiff's argument for jurisdiction in this case centers on its assertion that Defendant purposefully directed its opinion letter to Plaintiff in Utah, thereby causing Plaintiff injury in Utah.

The purposeful direction requirement has been described as an "act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[13]  The salient factors that together indicate purposeful direction are: intentional action, expressly aimed at the forum state, with knowledge that the brunt of the injury would be felt in the forum state.[14]

The parties are in agreement that Defendant intentionally drafted and addressed the opinion letter and, because Plaintiff is a Utah corporation, it follows that the harm suffered by Plaintiff was felt in Utah.  At issue is whether Defendant aimed its actions at Utah.

The Court finds the facts and holding of *Trierweiler v. Croxton and Trench Holding Corp.*[15] instructive on this issue.  In that case, an out-of-state lender agreed to loan $1.2 million to a Colorado borrower, but as a condition precedent to the loan, required an opinion letter as to

---

[12]*Dudnikov*, 514 F.3d at 1071.

[13]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[14]*See Shrader v. Biddinger*, 633 F.3d 1235, 1239–40 (10th Cir. 2011) (citing *Dudnikov*, 514 F.3d at 1072).

[15]90 F.3d 1523 (1996).

legal issues involving a guarantor.  The guarantor hired a local Colorado law firm to provide the opinion letter, which was in turn provided by the guarantor to the lender.  The Tenth Circuit accepted as true the lender's allegation that the law firm understood that its opinion letter would be sent to Michigan and relied upon there by the lender.  The defendant law firm also communicated with the lender's representative in Michigan telephonically.  On these facts, the *Trierweiler* court held that the defendant law firm's actions did "not constitute purposeful availment" and were insufficient to support a finding of specific jurisdiction.[16]

In reaching its holding, the *Trierweiler* court reasoned that although the defendant "may have known that the opinion letter . . . would be sent, via an intermediary, into Michigan, the mere forseeability of causing injury in another state 'is not a sufficient benchmark' for exercising personal jurisdiction."[17]  Thus, because "the only connection between [the defendant] and [the lender] was the opinion letter [the lender] requested," the defendant "could not have reasonably foreseen being subjected to Michigan jurisdiction."[18]

Similarly, here, the connection relevant to the specific jurisdiction analysis is Plaintiff's requests of an opinion letter from Defendant.  While recognizing that this case centers on its request of an opinion letter from Defendant, Plaintiff attempts to distinguish this case from *Trierweiler* by noting that Defendant addressed the envelope containing the opinion letter to its

---

[16]*Id*. at 1534.

[17]*Id*. (quoting *Burger King*, 471 U.S. at 474).

[18]*Id.*

address in Utah, had knowledge of Plaintiff's residency in Utah, communicated with Plaintiff in Utah, and has since reached out to Plaintiff in Utah to obtain a loan for a separate client.

It is clear that Defendant had knowledge of Plaintiff's status as a Utah corporation. This information was contained in the loan documents reviewed by Defendant and was transmitted to Defendant by Mr. Purjes during a meeting at Defendant's offices in New Hampshire. The fact that Defendant addressed the envelope containing the opinion letter to Utah also demonstrates its knowledge of Plaintiff's potential residency in Utah. That being said, mere knowledge of the Plaintiff's status as a resident of Utah, without more, does not give rise to a finding that Defendant could reasonably anticipate being hailed into court in Utah.[19] The only contacts Defendant is alleged to have with Utah—relevant to the specific jurisdiction analysis—is the opinion letter addressed to Utah and a number of phone calls made to Plaintiff in Utah. As in *Trierweiler*, Plaintiff requested the opinion letter and Defendant "could not have reasonably foreseen being subjected to [Utah] jurisdiction on this basis."[20] Furthermore, the fact that Defendant called Plaintiff in Utah "does not alter this conclusion."[21]

Plaintiff's argument regarding Defendant's conduct in initiating a subsequent unrelated loan to another of Defendant's clients is irrelevant to the Court's determination of whether specific jurisdiction exists in this case. Such evidence of unrelated contact with the forum may

---

[19] *See World-Wide Volkswagen*, 444 U.S. at 297.

[20] *Trierweiler*, 90 F.3d at 1534

[21] *Id*. (citing *Far W. Capital*, 46 F.3d at 1077 (holding that phone calls into forum do not themselves establish minimum contacts)).

be relevant to the issue of general jurisdiction.  However, as Plaintiff appears to concede, it is insufficient to establish general jurisdiction in this case.

In the alternative, Plaintiff argues that jurisdiction is also proper under the "effects test" set out in *Calder v. Jones*.[22]  One element of the *Calder* test is that an intentional action was "expressly aimed at the forum state."[23]  While other courts "have held that the expressly aimed portion of [the purposeful direction test] is satisfied when the defendant individually target[s] a known forum resident," the Tenth Circuit has taken "a somewhat more restrictive approach, holding that the forum state itself must be the focal point of the tort."[24]  As discussed previously, Plaintiff's Complaint and affidavits are devoid of any support for the proposition that Defendant's conduct was deliberately directed at this forum.  Therefore, Plaintiff's argument under *Calder* fails.

In sum, Plaintiff has failed to demonstrate that Defendant expressly aimed its actions at Utah or otherwise intentionally availed itself of the benefits of the laws of Utah sufficient to establish minimum contacts.  For this reason, the Court finds that Plaintiff has failed to meet its burden to establish a prima facie case of jurisdiction in this case.

---

[22]*See* Docket No. 17, at 15 n.1.

[23]*Dudnikov*, 513 F.3d at 1072.

[24]*Id*. at 1074 n.9 (internal quotation marks and citations omitted).

9

B.      DUE PROCESS

Because Plaintiff has failed to meet its burden to establish minimum contacts, the Court

need not reach the parties' arguments as to whether exercising jurisdiction in this case comports

with traditional notions of fair play and substantial justice.

## III.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

(Docket No. 8) is GRANTED.  The hearing in this matter, currently set for July 31, 2013, is

STRICKEN, and the Clerk of Court is instructed to close this case forthwith.

DATED   July 23, 2013.

BY THE COURT:

TED STEWART
United States District Judge